Pratt *v.* Battles.

---

EUNICE PRATT *v.* JASON BATTLES.

*Deeds. Depositions. Witnesses.*

It may be regarded as the settled law and practice in this state, in making title to real estate, that a party may prove the various links in his chain of title, by certified copies of deeds from the records of deeds in the town clerk's office.

Where the defendant offered in evidence a copy of a deed, purporting to be dated the 24th day of March, 1807, which was the day of the date of a defective deed which plaintiff had introduced, which was between the same parties and substantially identical, in terms at least, with the defective deed but which was not recorded until 1856, and the plaintiff claimed it was a forgery ; *held,* that the copy of the deed was properly admitted, and that the question as to the genuineness of the original was one for the jury.

The law which permits a party to show on the trial of a case that the other party has used means to induce witnesses on the other side to absent themselves from court, does not apply to a party to the suit, unless he is a mere nominal party ; and the fact that an agent of the party had acquired a lien on the judgment would not change the rule.

The defendant gave notice to the plaintiff of the time and place of taking a deposition. When the agent of the plaintiff arrived at the place appointed

for the taking of the deposition the justice had commenced to write out the deposition, and on the appearance of the plaintiff's agent, the defendant's agents, the justice, and the deponent, all withdrew to another room, and completed the direct examination of the deponent, and would not allow the plaintiff's agent to be present, although he insisted upon his right to be present. It was held that the deposition was improperly admitted, and the subsequent cross-examination of the deponent by the plaintiff's agent was no waiver of the irregularity in taking the previous part of the deposition.

The interference of a party in the taking of a deposition by suggesting and dictating answers to the witness, so as to render it doubtful whether the answers taken down were such as the witness would have given if left free to dictate his own answers, is sufficient to exclude a deposition.

When the ruling of the county court in admitting a deposition is *pro forma*, it is open to revision by this court.

QUERE.—Whether open to revision generally.

TRESPASS for a quantity of wood. Plea, the general issue, and trial by jury, at the January term, 1860, BARRETT J., presiding.

The plaintiff gave evidence tending to prove that the defendant took a large quantity of wood from lots 47 and 48, in Braintree. To make title to the wood and lots she gave in evidence a record copy of a deed from Jacob Spear to herself and others, dated July 1, 1802, by which said lots were conveyed to her. The plaintiff was married to Charles Pratt previous to the execution of the deed to her, and soon after said deed was executed she and her husband moved on to said lots and occupied them two or three years.

The plaintiff also gave in evidence a record copy of a deed from herself and husband to Lebbeus Edgerton and William Ford, Jr., dated March 24, 1807, conveying to them the same lots. It was proved that whatever title this deed conveyed passed through various persons until it became vested in one E. Parmelee, under whose permission the wood in question was taken by the defendant in 1849 and 1850.

The plaintiff lived with her husband until 1848, when he died, and the plaintiff then claimed to own and be entitled to the possession of the lots, on the ground that the deed from herself and husband to Edgerton and Ford was void as to her, for the reason that her acknowledgement of the deed was not taken separate and apart from her husband, as required by law at that time.

The defendant, in order to show that the plaintiff had no title to the lots, offered in evidence a certified copy of what purported to be a deed from the plaintiff and her husband to said Edgerton and Ford of the same lots, and bearing the same date as the one given in evidence by the plaintiff, but not recorded until 1856. The plaintiff claimed that this deed was a forgery, and objected to the admission of the copy in evidence until the existence of the original was shown and produced, or its non-production was accounted for, which objection was overruled, the court holding that the question whether it was a forgery or not was the main subject of controversy, and was to be settled by the jury upon all the evidence, and said copy was therefore admitted, to which the plaintiff excepted.

The defendant then gave evidence tending to show that on the day said deed was recorded his agent found the same among the papers of Ford, who died about 1830, and that he sent it for record the evening of the same day, and took it away as soon as recorded, and on or about the 21st day of April enclosed it in a letter directed to C. Blodgett, Esq., then in Canada, who was the agent of Parmelee, and at whose request he had made search for it, and that said letter had never been received, and on application to several proper post offices in Canada it could not be found by Blodgett.

The defendant then gave evidence tending to show that on the 24th day of March, 1807, Pratt and his wife, (the plaintiff,) executed one deed of the lots of land in question to Edgerton and Ford, before Edgerton arrived at the place where the writings were made, and when he arrived he objected to that deed for some informality in its execution, and that thereupon a second deed was made out of the same lots, and executed by Pratt and wife to Edgerton and Ford ; that Charles Pratt at the same time executed other deeds of other lands, held in his own right, to Edgerton and Ford, and that all these deeds were then delivered to Ford, who resided in Braintree, to send or convey to the town clerk's office for record ; that after the decease of Ford an old looking unrecorded deed, filed on the outside " Pratt and wife to Edgerton and Ford," was seen among his old papers in the same trunk where the unrecorded deed between the same parties was found in April 1856, which was recorded, as before stated.

The plaintiff then gave evidence tending to show that she executed only the deed, a copy of which she gave in evidence as before stated, and that the deed so secretly recorded was a forgery, and among other evidence given for this purpose was her own deposition, which was read to the jury.

The defendant then gave in evidence the deposition of the plaintiff, taken on his part in 1860. in which she testified that she might have executed two deeds.

It was then offered, in support of this suit. to prove that the plaintiff some time since had agreed with one Charles Spear, who had become bail in this case, that he should have the benefit of this suit and a lien upon the judgment, if one was obtained for the plaintiff, to indemnify him for such liability, and for security for the payment of such other liabilities as he might incur in carrying on the same, and for such sums as he should pay out therefor ; that Spear had incurred expenses, relying, in part, upon such lien, and that all this was known to the defendant and his agents ; that the plaintiff had said to the defendant's agents that she did not intend to state any thing different, in the last deposition, from what was stated in the first, so far as related to said deed ; that if she had she desired to put the matter right ; that the defendant's agent then told her that said depositions were not inconsistent with each other ; that Spear a few days before the court applied to her to come to the present term of this court to testify as a witness relating to this cause, when she expressed a willingness to do so, but that the agent of the defendant prevailed upon her to decline going, and when Spear then requested her to give her deposition the same agent induced her to refuse. This evidence was objected to by the defendant, and excluded by the court, to which the plaintiff excepted.

The defendant, in the course of the trial, offered the deposition of Micah Ford, to the admission of which the plaintiff objected, for irregularity in its taking, and called witnesses to prove what occurred when it was taken. The evidence upon this point showed substantially the following facts.

A notice for the taking of said deposition had been duly served on P. Perrin, attorney for the plaintiff; and one Montgomery, and one Bass, went as agents of the plaintiff, to be present at the taking of the same ; on arriving at the appointed place, and going

Pratt *v.* Battles.

into the house, they found the justice in the process of taking the deposition, and that he had partly taken the same, Beriah Battles and Ephraim Thayer being present and acting as agents and attorneys for the defendant.

Immediately after the arrival of the plaintiff's agents, by direction of the defendant's agents, the justice and witnesses, with the defendant's agents, went into another room and there, apart from the plaintiff's agents, completed the taking of the residue of the direct examination of the deponent. The plaintiff's agents requested and insisted on being present, but the defendant's agents objected ; and, with the concurrence of the justice, they were excluded, and were not present at the taking of any part of the direct examination of the deponent.

After the direct examination was completed the justice and the agents of the defendant returned into the room where the plaintiff's agents had been waiting in the meanwhile, when the direct examination was read over by the justice, and the plaintiff's agents took and read the same, and then proceeded to cross-examine the witness, as is shown by said deposition, this cross-examination being attended with great wrangling and confusion between the agents of the respective parties, caused mainly by the agents of the defendant interfering, upon the asking of questions, to suggest or dictate the answers which the witnesses should give ; in many instances they did so interfere, but the justice endeavored to take down the answers of the witnesses, as he meant and designed to have them taken down, and to give a fair and full cross-examination, but whether they were such as the witness meant to give, and have taken down, if said agents of the defendant had withheld their interference by way of suggestion and dictation, cannot be determined with certainty, though probably they were not so in all respects. The deponent was aged about seventy-five years, and was infirm.

Upon these facts the court *pro forma* admitted the deposition, and it was read as evidence in the case, to which the plaintiff excepted.

Under the rulings of the court, as above set forth, the plaintiff consented that a verdict might be taken for the defendant, with leave to except to the various decisions of the court.

Verdict and judgment for the defendant. Exceptions by the plaintiff.

*P. Perrin* and *L. B. Peck*, for the plaintiff.

*William Hebard* and *P. Dillingham*, for the defendant.

PECK, J. This is an action of trespass for a quantity of wood. Plea, the general issue and trial by jury. The cause comes here upon exceptions to several rulings of the county court in the course of the trial.

It appears from the case that the wood in question had been cut upon lots Nos. 47 and 48, in the first division of lands in Braintree,-previous to the taking by the defendant in 1849, complained of in the declaration. Both parties seek to make title to the wood by showing title to the land on which it was cut. The plaintiff introduces a deed from Jacob Spear to her, dated July 1, 1802, with proof that soon after the execution of that deed, she and her husband moved on to the premises, and occupied them about two or three years. She then introduced a copy of the record of a deed from her and her husband to Lebbeus Edgerton and William Ford, dated March 24, 1807, recorded April 4, 1807. Both these deeds purport to convey the lots in question. It appears that the last named deed was inoperative against the plaintiff for a defect in the acknowledgment by her, it not appearing by the certificate that she was examined separate and apart from her husband, agreeably to the statute then in force.

It appears that the plaintiff was married prior to the deed to her, and lived with her husband till 1848, when he died.

It also appears from the case that the defendant took the wood under the authority of one E. Parmelee, who holds the lots in question under a regular chain of conveyances from the grantees in said defective deed from the plaintiff and her husband, executed in 1807, as above stated.

As the defendant justifies under a title derived from the plaintiff through this defective deed, it is clear that this makes a title, as between these parties, in the plaintiff.

The defendant then offered a copy of record of a deed from

the plaintiff and her husband to said Edgerton and Ford, dated the day of the date of the defective deed from her and her husband to them, purporting to be regularly executed and acknowledged, but not recorded till April, 1856. This deed, of which the copy of record offered purported to be a copy, the plaintiff claimed was a forgery, and not a genuine deed, and objected to the introduction of the copy until the original should be produced or its non-production accounted for, as in cases where the original is the only primary evidence.

It may be regarded as the settled law and practice in making title to real estate that a party may prove the various links in his chain of title by certified copies of deeds from the records of deeds in the town clerk's office, without the production of the originals, except the deed to himself, in proof of which he must produce the original, because it is supposed to be in his custody.

Such copies are admissible mainly upon the ground of the faith that is due to the acknowledgment certified by the proper officer as *prima facie* proof of the genuineness of the instrument, and partly upon grounds of convenience, the originals not being supposed to be in the possession of the party, there being no such practice here, as in England, of the custody of the title deeds passing to the successive grantees.

Was there any thing in this case to warrant or require the court to dispense with this rule, and require the production of the original before admitting the copy? To determine whether there was error in the county court in not doing so, we must look at the state of the evidence at the time the copy was offered and admitted. It is true the defendant claimed that it was a forgery, but if this alone would require the original to be produced, the same claim might be set up in every case, and thus in every case the party would be obliged to produce the original or account for the non-production of it by proof. It appears that the copy offered purported to be dated the day of the date of the defective deed which the plaintiff had introduced, and was between the same parties, and identical in terms with it, substantially at least, and not recorded till 1856. Without deciding whether or not such *prima facie* evidence of fraud or forgery might be shown, or appear, as to warrant the court in requiring

the production of the original, the court think in this case, whatever suspicions may have arisen from the circumstances when the copy was offered, that the county court were right in admitting it and submitting the question as to the genuineness of the original to the jury.

The next objection is to the rejection by the court of the evidence offered by the plaintiff as to the statements made by the defendant's agent to the plaintiff and his conduct in inducing the plaintiff not to be present in court as a witness. It appears that the plaintiff gave a deposition to be used in her behalf tending to show that she executed but one deed to Edgerton and Ford ; that the defendant afterwards took her deposition, which tends to show that she might have given two such deeds ; that it came to her knowledge afterwards that it was claimed that she had testified differently in relation to the deeds in the second deposition from what she did in the first, and that she told the defendant's agent that she did not intend to state differently in this particular in the second deposition from what she did in the first, and that if she had, she desired to put the matter right ; that the plaintiff's agent, who had by agreement with the plaintiff, acquired an interest in the judgment that might be recovered to secure him for advances he had made in carrying on the suit requested her to be present at the trial and testify ; and that she expressed a willingness to do so, but was induced by the defendant's agent not to come, and was told by him that her second deposition was not different from the first. This evidence was rejected. It has been decided in this state that it is competent, under certain circumstances, for one party to show that the other party has used means to induce witnesses on the other side to absent themselves from court ; and in this case, if the deponent was a mere witness in the case and not a party, or a witness and but a nominal party, the conduct of the defendant's agent in falsely representing to her as he did and inducing her not to appear as a witness, would be admissible as tending to show that he knew there was some mistake or fraud in procuring such deposition as he had procured from the plaintiff which would be explained or exposed if she attended and testified ; and thereby add credit comparatively to the deposition first taken in the par-

ticular in which it differed from the one taken by the defendant. But although the plaintiff's agent had a lien on the judgment, yet the plaintiff must be regarded as the real party, still having the primary interest in the suit; and as it appears that the plaintiff's agent was present and the plaintiff was informed of the discrepancy in her two depositions, so that she had an opportunity to appear and testify if she chose, the evidence offered was not admissible. Under these circumstances, the plaintiff, being a party in interest, stands in a different light in this respect from a mere witness.

This testimony was properly rejected.

The next error complained of is the decision of the court in admitting the deposition of Micah Ford under the plaintiff's objection, founded on the irregularity in taking it.

It appears that the plaintiff was duly notified of the time and place of taking the deposition; that when the plaintiff's agent arrived at the place the defendant's agents had commenced taking the deposition. Thus far no irregularity appears, because it does not appear that they commenced before the time set in the notice.

But immediately on the arrival of the plaintiff's agents the agents of the defendant induced the justice to withdraw with them and the witness into another room, and excluded the agents of the plaintiff, and completed the direct examination in the absence of the plaintiff's agents, who insisted on being present.

This was clearly such an irregularity as to exclude the deposition. The statute, giving the right to use depositions, provides that they shall be taken " *in the manner* " prescribed, and among other things it is provided that notice shall be given to the adverse party " *so that the party may have a reasonable time to appear and be present at the taking of such deposition.*" This is the very language of the statute. This privilege or right the plaintiff has been deprived of by the wrongful act of the party taking and offering the deposition. At common law it is regarded as important that testimony shall be given by witnesses in open court, in the presence of the court and jury and of the adverse party or his counsel. The statute which for convenience authorizes in certain cases the use of testimony taken out of court by

deposition, carefully preserves the right of the adverse party to be present, and this right the plaintiff has been deprived of. The statute in this case has not been complied with either literally or substantially; and under the numerous decisions in this state requiring a strict compliance with the statute in matters of *form*, it is clear that a departure, not only from the terms but from the spirit and substance of the statute, in a point so important to the interests of the adverse party, must render the deposition inadmissible.

It is no answer to say that the plaintiff, after the direct examination was completed, had an opportunity to cross-examine. The adverse party has a right to be present during the taking of the whole testimony. He has a right to see that the examination is regularly conducted, that the testimony is not drawn out by leading or improper questions, that the witness is left free to dictate his own answers, and that the testimony is correctly and fully taken down, and that no part material to his interests is omitted. It is no answer to say that it is incumbent on the plaintiff to prove that it was not done so, after the defendant has designedly excluded the plaintiff from all means of knowing or proving what did transpire. But if proof were necessary it is not wanting in this case. What transpired immediately after on the cross-examination is quite satisfactory proof that all was not regular on the direct examination.

But it is claimed that the cross-examination *in fact* of the witness by the plaintiff is a waiver of the irregularity in taking the previous part of the deposition. It is undoubtedly true that in many cases under other circumstances it would be so; as where a party appears and finds that the body of the deposition is already prematurely written, and the party proceeds without objection to cross-examine, thereby inducing the other party to suppose it is satisfactory and to rely on it as such, it should be treated as a waiver. But here the plaintiff's agents protested against the taking of the direct examination while he was excluded from the room, and nothing transpired afterwards tending to show that there was any intentional waiver, or to show that the other party had any just ground to understand it so. But if it would have been a waiver had the plaintiff been

allowed to cross-examine the witness as he had a right to, it is clear that it is not so in this case, since the case shows that during the cross-examination there was such an interference with the witness by the agent of the defendant in suggesting or dictating the answers which the witness should give, as to render it doubtful, at least, whether the answers taken down were such as the witness would have given if left free to dictate them himself. This attempted cross-examination, which was thus substantially defeated by the wrongful interference of the defendant's agents, can not be treated as a waiver of the previous irregularity, unless one irregularity is cured by another committed by the same party, both tending to suppress or pervert the truth.

But if no other objection appeared, this interference on the part of the defendant's agents, by suggesting and dictating answers to the witness, to the extent and in the manner stated, is sufficient of itself to exclude the deposition.

This is a power exercised in chancery in suppressing testimony, and in cases of testimony taken under a commission at common law; and under our statute authorizing the taking of depositions it is equally necessary to ensure the due administration of justice and the proper protection of the rights of the parties.

But it is claimed that it is a matter within the discretion of the county court, and that for that reason the decision of the county court can not be reviewed by this court. But we are not prepared to say that it is so exclusively a matter of discretion that the decision of the county court is in all cases conclusive; but in this case the exceptions show that the ruling of the county court admitting this deposition was *pro forma*, which shows that the county court did not attempt to exercise their judgment or discretion in the matter, and in such case it must be open for the decision of this court. For this error in admitting this deposition the judgment of the county court is reversed and a new trial granted.